E-filing

VICTORIA H. STAFFORD (No. 148053)
Attorney at Law
6114 LaSalle Ave., No. 161
Oakland, CA 94611
Telephone (510) 893-2783

Attorney for Petitioner
DELANO TOLDEN

FILED
AUG - 7 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DELANO TOLDEN,

    Petitioner,

    v.

JAMES E. TILTON, Director,
   Department of Corrections,

    Respondent.

D.C. No. C08-03782 CW

**PETITION FOR WRIT
OF HABEAS CORPUS**

    Petitioner, Delano Tolden, through his counsel Victoria H. Stafford, files this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 et seq. Petitioner alleges as follows:

    1. The name and location of the court which entered the judgment of conviction and sentence under attack herein is the Superior Court of the County of Santa Clara, State of California, case number CC467314.

    2. Petitioner is confined at the California State Prison in Solano, California under a sentence of life imprisonment pursuant to the judgment of the Santa Clara County Superior Court, case number CC467314.

    3. The date of the entry of the judgment and sentence in case number CC467314 was April 21, 2005.

    4. Petitioner was charged by Information filed on October 14, 2004, and by an Amended Information filed on December 10, 2004, in count one with failing to register as a sex offender in Sunnyvale and in count two with failing to notify the Modesto police of his new address. Penal Code § 290(g)(2). Thirteen prior strike convictions and two prior prison terms were alleged.

Penal Code §§ 667.5(b), 1170.12.

5. On December 1, 2004, jury trial before the Honorable Rise Jones Pinchon started.

6. On December 13, 2004, the jury reached a guilty verdict in count 1 and a not guilty verdict in count 2.

7. On December 14, 2004, petitioner having waived a jury trial on the priors, the court found all the allegations to be true.

8. On April 21, 2005, the court denied petitioner's motion to strike his prior strike convictions, but struck the two prior prison term allegations. It then sentenced him to a term of 25 years to life under the Three Strikes law.

9. Petitioner timely appealed his conviction to the California Court of Appeal for the Sixth Appellate District under case number H028839. The appeal raised the following issues:

A. The court committed prejudicial error in failing to exclude appellant's statement to officer Olson due to the prosecution's failure to prove a voluntary and intelligent waiver of *Miranda* rights;

B. Admission of highly prejudicial testimony regarding appellant's failure to comply with parole regulations violated appellant's right to due process and a fair trial as well as Evidence Code sections 1101, subdivision (a) and 352;

C. The court committed prejudicial constitutional error in instructing the jury in CALJIC 1.20 and CALJIC 3.30 that it need not find that appellant intended to violate the law or that he knew his conduct was unlawful;

D. Misinstruction on the actual knowledge element of the offense was prejudicial error;

E. The court committed prejudicial error in giving CALJIC 2.01, the general circumstantial evidence instruction, instead of CALJIC 2.02 which pertains to circumstantial evidence of mental state;

F. The court erred in failing to instruct in mistake of law;

G. Imposition of a life sentence on a mentally retarded defendant for failing

register as a sex offender and for remote strike convictions is cruel and unusual punishment under the state and federal constitutions;

    H. Imposition of greater restitution fines following retrial violated double jeopardy and due process provisions of the state constitution;

    I. The Penal Code section 290.3 fine must be stricken;

    J. Imposition of a court security fee violated prohibitions against retroactive and ex post facto application of statute.

10. On July 13, 2005, in case number H028839, the Court of Appeal for the State of California, Sixth Appellate District, issued an opinion affirming petitioner's convictions but reducing the fines imposed.

11. On April 20, 2007, the Court of Appeal denied petitioner's petition for rehearing.

12. On May 7, 2007, petitioner filed a petition for review in the California Supreme Court in case number H028839, California Supreme Court case number S152501. The petition for review raised the following issues:

    A. Review must be granted to decide whether imposition of a life sentence on a mentally retarded defendant for failing register as a sex offender and for remote strike convictions is cruel and unusual punishment under the state and federal constitutions;

    B. Review should be granted to decide whether it is error to instruct a jury that to convict a defendant of failing to register, it must find he had actual knowledge of his duty to register but it need not find he intended to violate the law or knew his conduct was unlawful;

    C.. Review should be granted to decide whether it is error not to require proof that the defendant knew of the specific registration provision with which he failed to comply;

    D. Review should be granted to decide whether a *Miranda* waiver may be implied where there is a break in the interrogation of unknown length and content between the advisement and the resumption of the interrogation.

13. On June 20, 2007, the California Supreme Court denied the petitioner's petition for review in case number S152501. On June 22, 2007, remittitur issued.

14. The instant case was a retrial following a reversal on appeal in Santa Clara County case number 204709. In that case, an information filed on April 27, 1998 charged petitioner with failing to register as a sex offender and failing to notify the Modesto police department of his new address, Penal Code § 290(g)(2), and alleged 17 prior strike convictions and two prior prison terms. Following a court trial, on October 18, 1999, the trial court found him guilty on both counts and petitioner admitted the prior conviction allegations. On February 8, 2002, the court imposed concurrent terms of 25 years to life, dismissed one strike allegation on the prosecution's motion and struck the two prior prison term allegations. In an opinion filed on May 27, 2004, the Court of Appeal, Sixth Appellate District, reversed petitioner's conviction on the ground that the trial court had relied on an erroneous definition of willfulness when it concluded that a violation of section 290 does not require proof that the defendant had actual knowledge of the registration requirement. The court found the error prejudicial because petitioner had presented "significant evidence" to refute the allegation of willfulness consisting of evidence that he is mentally retarded and has limited mental functioning.

15. The grounds on which petitioner alleges he is confined unlawfully in violation of the Constitution and law of the United States are as follows:

**Claim No. 1: IMPOSITION OF A LIFE SENTENCE ON A MENTALLY RETARDED DEFENDANT WITH SERIOUS IMPAIRMENT OF MENTAL FUNCTIONING FOR FAILING REGISTER AS A SEX OFFENDER AND FOR VERY REMOTE STRIKE CONVICTIONS IS CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

16. Petitioner's sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because the undisputed evidence at trial showed that he is mentally retarded and would not have been capable of complying with sex registration requirements without assistance. *Atkins v. Virginia*, 536 U.S. 304, 318 (2002); *Ewing v. California*, 538 U.S. 11, 23 (2003). The following facts support this claim:

17. Petitioner was convicted of failing to register as a sex offender in violation of Penal Code section 290(g) and received a sentence of 25 years to life sentence under the Three Strikes

4

law.

18. Petitioner was arrested on November 16, 1997 in Sunnyvale, California for failing to comply with sex registration requirements by failing to register in Sunnyvale and failing to notify Modesto authorities that he had moved. It was determined that he had last registered in Modesto in 1994. Upon his arrest, he gave his name as Donald Tolden and his birth date as September 8, 1959.

19. When officer Lee interviewed petitioner at the station, petitioner gave his date of birth as July 9, 1954. Petitioner recounted how he moved to Hayward in November 1994, then moved around the Bay Area, and finally moved to San Jose in June or July of 1997. He stated he had not registered since registering in Modesto in 1994. Lee found numerous dates of birth and variations on petitioner's name listed in Violent Crime Information Network and California Department of Justice databases.

20. The day after his arrest, petitioner was interviewed by officer Olson. He admitted he had been living at 174 Carol Street in Sunnyvale for 18 months. He asked Olson to contact the manager Marilyn and gave him a phone number which turned out to be off by a few digits. He told Olson that starting in 1996, he had been working as a baggage handler at Greyhound. He said he was afraid to go back to Modesto, and he described how he knew something about a friend's murder and that his life, the life of his parole officer, and a police officer's life had been threatened because someone suspected petitioner was a snitch.

21. Olson asked petitioner why he did not go to the Sunnyvale Department of Public Safety and register since he was living in Sunnyvale. Petitioner responded: "I didn't know anything about that.... So there's a lot of things I'm just now learning about, you know.... I didn't know that." When Olson asked whether he was saying he did not know he had to register, petitioner stated: "I figured, I figured since I was already registered, you know, I didn't know at that time, that I didn't know nothing about that at the time, you know.... I figured then, that was that, you know." When Olson asked him whether he had to register as a narcotics offender, petitioner responded, "No, I just, it was just one time, you know." After Olson described the sex

5

PETITION FOR WRIT OF HABEAS CORPUS

registration requirements, including that the requirement used to be to register within 14 days, but now it was five, petitioner told him he wanted to "get this stuff out of the way," that there would be no problem with him registering, and that the requirement used to be 15 days, but nowadays it was five.

22. Olson testified that during the interview, petitioner was somewhat incoherent, unresponsive, and rambling. Petitioner gave Olson the impression he was trying to convince him he had been doing a good job and not getting into trouble, and that he was eager to please. Petitioner told him he had been working hard and always paid his rent on time. During the interview petitioner was very emotional and was sobbing.

23. Clinical forensic psychologist Dr. Timothy Derning testified that he evaluated petitioner twice, in 1999 and in 2004. On both occasions, Derning concluded that petitioner had significant cognitive limitations. He measured petitioner's verbal IQ as 73, and his performance IQ as 65, giving him a full scale IQ score of 67. This placed him in the bottom first percentile of the population, which he stated is extremely low. Derning's results were consistent with the results of an IQ test administered previously in prison and with two prison classification documents in which his reading level was assessed as at second grade, or below fourth grade, based on his TABE test scores.

24. Derning administered an executive functions skills test, the Deles Kaplan Executive Function System or DKEFS, which tests higher order cognitive processes based on memory, concentration, and cognitive skills, including ability to plan, respond, and organize. Petitioner scored 3 in a scale in which 10 was average, was slow to complete the test, made mistakes, and had difficulty staying on task. His reading ability was poor. His inability to finish the visual scanning test led Derning to conclude he had a significant impairment in the flexibility of his cognitive reasoning. On the motor speed test, he performed in the low average range, which indicated his deficits were cognitive rather than related to motor ability. On the verbal fluency test, petitioner scored 4 out of 18. Derning could not score the last part of the test because petitioner could not complete the test. His overall performance suggested he has an impairment

6

and difficulty following directions, staying on task, and thinking quickly. (6 RT 560.)

25. Derning testified that petitioner did poorly on the Wisconsin Card Sort test, which also tested executive function. He was not able to match cards by color, and would make mistakes sorting by shape, even though he was genuinely trying. Derning discontinued the test because there was no point in torturing him with it.

26. Derning gave petitioner the KFAS, or Kaufmann Functional Academic Skills test, which measures adaptive ability and academic skills and asks people to do real world problem solving tasks. His composite score put him in the second percentile.

27. A cognitive competency test administered in 1999 also measured petitioner's ability to do real world tasks. Derning read petitioner an appointment and its date, time, and location, e.g., a dentist appointment on Wednesday at 3:30 at the central clinic, and immediately asked him to repeat it. Petitioner got only half of it right. Derning repeated the information, and asked him to repeat it 20 minutes later, at which time petitioner remembered only three out of the four elements. When Derning gave petitioner a mixture of financial documents and asked him to select which ones to deposit, petitioner included bills and receipts with the cash and checks. On an employment form Derning asked him to fill in, petitioner put his full name in the box for the last name, and gave a date of birth of November 9, 1953.

28. Derning determined that petitioner had significant memory issues based on the memory skills subtest. When Derning administered the Wechsler Memory Scale, petitioner was unable to do even the basic tasks. In Derning's opinion, petitioner would have difficulty with long-term event planning, and would need a tool, such as a calendar, to remind him. Petitioner was not good with dates, including his own date of birth and the present date.

29. Derning believed that the language on the notification form, like "I must register within 14 days of coming to any city, county or city and county in which I am domiciled with the law enforcement agency having jurisdiction over my place of residence," did not fall within second and third grade reading level and was clearly over petitioner's head.

30. Petitioner's manager at the Greyhound station, Geraldine Fegley described

7

PETITION FOR WRIT OF HABEAS CORPUS

petitioner's job duties. He put destination tags on passengers' luggage, unloaded luggage, and matched the tags to the passengers' claim checks. He filled out tally cards which required him to note for each bus the schedule, the bus number, the final destination, and the number of bags and express packages. In addition, petitioner had janitorial duties which entailed cleaning the buses. Fegley asked petitioner not to handle bus bills after she determined that he consistently failed to fill in the required information or filled it in incorrectly, with the result that the baggage would not get to the passenger.

31. Fegley stated that petitioner received scores between 3.0 and 3.5 on a scale of 0 to 5, 5 being the highest, on his performance evaluations. As a new employee, petitioner was teamed with an old employee. His starting pay was $5.90, which was then increased to $6.60 per hour. His check was sent to the Greyhound station where he would pick it up. Greyhound conducted a pre-employment employee investigation of petitioner.

32. Although Fegley testified that petitioner had excellent oral and written communication and basic math skills, she acknowledged the numerous spelling and usage errors on his job application, such as "Janitor experience, wax, fool, clean, take wax off. Clean restrooms, stock person, clean win, fix door," were not indicative of excellent communication skills. She agreed that most of petitioner's work was manual and did not involve a lot of cognitive thinking ability, and that two baggage handlers were scheduled to work each shift, only one of which would do the tally sheets, which were then checked by the bus drivers. She further acknowledged that petitioner would not have been promoted from baggage handler based on his inability to fill in bus bills. Fegley testified that petitioner was a hard worker and eager to please.

33. Marilyn Beswick, the property manager of petitioner's Carol Street apartment, testified that petitioner moved into one of the affordable studios in November of 1996. She stated she had no problem communicating with him, but acknowledged she only saw him occasionally and their communication consisted of a passing "hello." On the application he listed his name as Delano Don Tolden, and put his last name in the box for the first name, and the name Don in the line above. He misspelled baggage, and in the space for adding information

8

that might be helpful, petitioner wrote: "I have not had any evaluating last past 19 year since been heard in California. None." He gave a date of birth of July 19, 1952.

34. Santa Clara County Jail correctional officer Martin Strosnider testified that he interacted with petitioner in 2001 when petitioner was a temporary trustee. Petitioner cleaned and assisted in distributing lunches and dinners. Though he followed instructions, answered questions appropriately, and communicated in a way Strosnider could understand, he was "a little slow," and he was always assisted by another inmate. He described petitioner as eager to please.

35. It was stipulated at trial that petitioner's actual date of birth was July 9, 1959.

36. Petitioner had not suffered any felony convictions since his 16 convictions for sex offenses in 1981, a quarter century before trial. Those offenses arose from a single episode of sexually violent behavior when petitioner was 21. He used a pellet gun to force four teenagers to a remote area where he made the girls engage in sex acts over the course of an hour and a half. After his release in 1991, he was convicted only of two misdemeanors, falsely identifying himself to an officer in 1991 and possessing paraphernalia, and his parole was violated eight times.

37. The Eighth Amendment to the United States Constitution, which prohibits the infliction of "cruel and unusual punishments" forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003). To determine proportionality, the court considers: 1) the gravity of the offense and the harshness of the penalty; 2) the sentences imposed on other criminals in the same jurisdiction; and 3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290 (1983). The Eighth Amendment "'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Kennedy v. Louisiana*, _ U.S. _, 128 S. Ct. 2641, 2649 (2008) (quoting *Trop v. Dulles*, 356 U.S. 86 (1958)).

38. The deficiencies of the mentally retarded "do not warrant an exemption from criminal

PETITION FOR WRIT OF HABEAS CORPUS

sanctions, but they do diminish their personal culpability." *Atkins v. Virginia*, 536 U.S. 304, 318 (2002). The mentally retarded have "diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." *Id.* Exempting the mentally retarded from the death penalty reflects "evolving standards of decency." *Id.* at 321.

39. A 25-year-to-life sentence for a technical violation of Penal Code section 290 committed by a man with no mental defect is cruel and unusual under the United States Constitution where the defendant did not intend to evade law enforcement and his prior convictions sustained 16 years earlier were remote. *People v. Carmony*, 127 Cal.App.4th 1066, 1072 (2005) The sentence imposed was longer than required for second-degree murder in California, and California is the only state that requires a life sentence with a mandatory prison term of 25 years prior to parole eligibility for a three-strikes offender whose violation is noncompliance with the annual registration requirement. *Id.* at 1084.

40. In petitioner's case, Dr. Derning's uncontroverted testimony showed that petitioner is mentally retarded, that he falls within the bottom first percentile of the population in cognitive functioning and the bottom second percentile in life skills, and that he suffers memory impairments that are so serious that he cannot recall his full name, or his date or place of birth. The same expert's testimony showed that petitioner would have been incapable of understanding, remembering, and complying with sex registration requirements unless he received assistance.

41. The evidence showed that petitioner did not intend to evade law enforcement. He was employed with Greyhound, a major national corporation and was receiving wages and paying taxes under his real name. He was living in low income housing under a lease in his own name.

42. Petitioner's prior strike convictions were extremely remote as they were sustained 23 years before trial and were not followed by any other felony convictions.

43. Petitioner's life sentence for failing to register as a sex offender after moving to a new city is "grossly disproportionate" to the crime and constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution, because the uncontroverted evidence showed that his limited mental functioning rendered him incapable of understanding, remembering, and complying with sex registration requirements, the evidence showed that he did not intend to evade law enforcement, his prior convictions were extremely remote, his sentence is longer than that imposed for second-degree murder in California, and California is the only state in which life sentences are imposed on persons who fail to comply with sex registration requirements.

**Claim No. 2: THE PROSECUTION DID NOT MEET ITS BURDEN OF PROVING THAT PETITIONER MADE A VALID WAIVER OF HIS *MIRANDA* RIGHTS BECAUSE HE DID NOT EXPLICITLY WAIVE HIS RIGHTS AND NO WAIVER CAN BE IMPLIED BECAUSE THERE WAS A BREAK IN THE INTERROGATION OF UNKNOWN LENGTH AND CONTENT BETWEEN THE ADVISEMENT AND THE RESUMPTION OF THE INTERROGATION.**

44. Petitioner's Fifth and Sixth Amendment rights were violated when his statement to officer Olson was admitted although the prosecution did not prove that petitioner waived his *Miranda* rights. The following facts support this claim:

45. Petitioner hereby incorporates by reference paragraphs 1 to 43 of this petition.

46. After officer Olson advised petitioner of his constitutional rights and asked him whether he was willing to waive his rights, petitioner asked to speak to Olson off the tape and Olson turned off the recorder. When the recording resumed, Olson started questioning petitioner and petitioner responded to questions. At trial, officer Olson could not recall how long the break in the interview was or what was said in that break, but he was sure he did not make promises because he never does. Petitioner never waived his rights on the record.

47. A waiver of *Miranda* rights is knowing and intelligent if it is "made with a full

11

PETITION FOR WRIT OF HABEAS CORPUS

awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) The prosecution "bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver, and the voluntariness of the confession." *Missouri v. Seibert*, 542 U.S. 600, 609 (2004). Neither the advisements nor the waivers may be presumed from a silent record. *Miranda v. Arizona*, 384 U.S. 436, 498-99 (1966); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). A defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may support a conclusion that a defendant has waived his rights. *North Carolina v. Butler*, 441 U.S. at 373.

48. Petitioner's conduct did not indicate waiver because he neither communicated an intent to waive his rights nor did he immediately answer questions. Instead, when Olson asked him if he was willing to waive his rights, he asked to speak with Olson off the record, conduct which bespoke a reluctance to speak or at least a concern about waiving his rights. In addition, the advisement and the continuation of the interrogation were separated by a gap of unknown duration during which a conversation of unknown content occurred between the officer and the defendant. At best, such a gap is a silence, from which, according to *Miranda*, nothing may be presumed. This evidence precluded a finding of inferred waiver in petitioner's case.

49. The admission of the interrogation was damaging. Petitioner admitted that he moved from Modesto in 1994 and that he had not registered. Although petitioner did not admit that he knowingly failed to register, the prosecutor used his statements out of context to make it appear that he moved to evade detection. Thus, the prosecutor emphasized that petitioner told Olson he did not return to Modesto because they would "smoke" his parole, although it is clear from his consistent use of the term "smoke" in the sense of "kill" during the interview that he meant that he feared his parole officer, a police officer, and he himself would be smoked by the "dudes" involved in a homicide

12

PETITION FOR WRIT OF HABEAS CORPUS

**Claim No. 3: PETITIONER WAS DEPRIVED OF HIS FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE COURT INSTRUCTED THE JURY THAT TO CONVICT PETITIONER IT NEED NOT FIND HE INTENDED TO VIOLATE THE LAW OR KNEW HIS CONDUCT WAS UNLAWFUL.**

50. Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court instructed the jury that a conviction of violating registration requirements does not require an intent to violate the law. *Lambert v. California*, 355 U.S. 225, 227 (1957) (person may not be convicted of failing to register as a felon if person did not know of the duty to register and there was no proof of the probability of such knowledge); *Bartlett v. Alameida*, 366 F.3d 1020, 1023-24 (2004); *People v. Garcia*, 5 Cal.4th 744, 753-754 (2001) (actual knowledge of the registration requirements is a required element of a registration offense); *Sandstrom v. Montana* (1979) 442 U.S. 510, 524; *United States v. Golitschek* (2nd Cir. 1986) 808 F.2d 195, 203 [error to instruct that ignorance of law no excuse when knowledge of a requirement is an element of the offense]. The following facts support this claim:

51. Petitioner hereby incorporates by reference paragraphs 1 to 49 of this petition.

52. The trial court instructed the jury in CALJIC 1.20 that "[t]he word 'wilfully' does not require any intent to violate the law or to injury [sic] another or to acquire any advantage." The court then gave CALJIC 3.30, which stated: "General criminal intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful." The trial court subsequently also instructed the jury that it must find that "the defendant had actual knowledge of his duty to register," and that "having that knowledge, defendant wilfully failed to register" within 14 days.

53. The trial court gave contradictory instructions when it instructed the jury both that it need find that petitioner violated the law, which was incorrect, and that it must find he had actual knowledge of his duty to register, which was correct. Moreover, it provided the jury with no

guidelines for resolving the contradiction. "[L]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity" because the "reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Francis v. Franklin*, 471 U.S. 307, 322 (1985). This is true in petitioner's case where it is impossible to tell whether the jury followed the incorrect or correct instruction.

54. If the jury followed CALJIC 1.20 and CALJIC 3.30 and did not find that he had actual knowledge of the registration requirements, the prosecution obtained a conviction based on evidence that did not rise to the level of proof beyond a reasonable doubt of every element of the offense as required by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution

55. Under the facts of this case, petitioner suffered reversible prejudice as a result of the misinstruction because the error cannot have been harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). There was strong evidence, consisting of petitioner's mental retardation, his memory deficiencies, his incapacity to understand the language of the registration notice, and his statements to officer Olson that he did not know he was required to register again, from which the jury could have concluded that petitioner did not have the required mental state because he did not have knowledge of the registration requirements. The giving of CALJIC 1.20 and 3.30 allowed the jury to convict him nonetheless.

**CLAIM NO. 4: PETITIONER WAS DEPRIVED OF HIS FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE COURT FAILED TO INSTRUCT THE JURY THAT IT MUST FIND THAT Petitioner KNEW OF THE SPECIFIC REGISTRATION PROVISION WITH WHICH HE FAILED TO COMPLY.**

56. The trial court violated Fifth, Sixth, and Fourteenth Amendment rights because, although it told the jury it was required to find that petitioner had actual knowledge of his duty to register, it did not require the jury to find beyond a reasonable doubt that he knew he was

14

PETITION FOR WRIT OF HABEAS CORPUS

required to register within 14 days of moving to a new city, thus allowing the jury to convict petitioner without finding all the elements proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *Almendarez-Torres v. United States*, 523 U.S. 224, 251 (1998). As petitioner's actual knowledge of the specific registration requirement at issue was the only element in dispute, the error was prejudicial. The following facts support this claim:

57. Petitioner hereby incorporates by reference paragraphs 1 to 55 of this petition.

58. The court instructed the jury as follows:

> In order to prove such a crime, each of the following elements must be proved:
> One, the defendant is a person who, having previously been convicted of a qualifying felony sex offense, is required to register as a sex offender pursuant to Penal Code Section 290.
> And, two, defendant moved into a city in the State of California and establish [sic] a new residence and domicile.
> And, three, the defendant had actual knowledge of his duty to register.
> And, four, having that knowledge, defendant wilfully failed to register within 14 working days with a law enforcement agency having jurisdiction over his place of residence or domicile.

59. A conviction of violating section 290 requires proof that the defendant had actual knowledge of the specific registration provision with which he failed to comply. *People v. Garcia*, 25 Cal.4th 744, 752; *People v. LeCorno*, 109 Cal.App.4th 1058, 1068 (2003); *People v. Edgar*, 104 Cal.App.4th 210, 220 (2002).

60. The instruction the court gave allowed the jury to convict petitioner if he knew he was required to register, even if he did not know of the specific requirement that he register when he moved into a new city.

61. The misinstruction caused petitioner to suffer reversible prejudice because the evidence in this case supported the conclusion that petitioner knew he was required to register, but did not know he was required to register within 14 days of moving to a new city. *Chapman v. California*, 386 U.S. at 24. When officer Olson asked petitioner why he did not go to the Sunnyvale Department of Public Safety and register since he was living in Sunnyvale, petitioner

responded: "I didn't know anything about that.... So there's a lot of things I'm just now learning about, you know.... I didn't know that."  When Olson asked whether he was saying he did not know he had to register, petitioner stated: "I figured, I figured since I was already registered, you know, I didn't know at that time, that I didn't know nothing about that at the time, you know.... I figured then, that was that, you know."

62. Petitioner's statements to Olson also showed that he felt he satisfied registration requirements by registering one time and then staying out of trouble.  When officer Olson told petitioner the he registered as a transient in 1994 and could do that now, petitioner responded: "Tolden: May I got (*)[1] look man, I, I, well you can even call this number, you now, I been, I just been working."  When Olson asked him again why did not register in Sunnyvale, petitioner answered: "At the time I was just trying, you now trying to figure out how to get my life back together, you know.... (*) you know, I was staying, you know at that time, that I was just trying to get myself together...."  Throughout the interview he repeated that he was working, paying rent, and staying out of trouble, apparently believing that this would exonerate him.  For example, after telling Olson how much he liked having a job and his own place, he said proudly: "My, matter of fact, my manager will tell you, he say, he, we brag, he saying he comes and goes, pays his rent."

63. As there was strong evidence that petitioner knew he was required to register in general, but did not know of the specific provision requiring him to re-register in his new domicile within 14 days of moving, an instruction that improperly allowed the jury to convict him without proof that he had knowledge of the precise provision he was accused of violating cannot have been harmless.

///

///

---

[1] The asterisk was used in the transcript to indicate inaudible portions of the interview.

16

PETITION FOR WRIT OF HABEAS CORPUS

**PRAYER FOR RELIEF**

Accordingly, petitioner prays for the court to:

1. Grant petitioner leave to conduct such discovery as has been and shall later be requested by petitioner upon a showing of good cause;

2. Hold an evidentiary hearing on petitioner's claims if necessary.

3. Issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to have petitioner brought before it to the end that the judgment and sentence of the trial court be vacated;

4. Grant such other relief as may be appropriate and as law and justice require.

DATED: August 6, 2008

VICTORIA H. STAFFORD
Attorney for Petitioner Delano Tolden

17

PETITION FOR WRIT OF HABEAS CORPUS

**VERIFICATION**

Victoria H. Stafford states as follows:

1. I am an attorney representing Delano Tolden in this habeas corpus action.

2. To avoid unnecessary delay in the filing of this Petition, I am verifying the petition on Petitioner's behalf.

3. Based on my review of the state court record, I know all of the facts described in this Petition and verify them to be true.

4. I have conferred with Petitioner Delano Tolden and have discussed with him the claims raised in this petition. Mr. Tolden has approved the claims raised in this petition and will receive a copy of the Petition.

I swear under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 6th day of August, 2007 at Oakland, California.

VICTORIA H. STAFFORD

PETITION FOR WRIT OF HABEAS CORPUS

**PROOF OF SERVICE**

The undersigned certifies that she is an active member of the State Bar of California, not a party to the within action, that her business address is 6114 La Salle Avenue, No. 161, Oakland, California 94611, and that she served a copy of the following documents:

PETITION FOR WRIT OF HABEAS CORPUS

by placing same in a sealed envelope, fully prepaying the postage thereon, and depositing said envelope in the United States Mail at Oakland, California on August 6, 2008 addressed as follows:

ATTORNEY GENERAL
455 Golden Gate Ave, Suite 11000
San Francisco, CA 94102-3664

Delano Tolden
T-51440
California State Prison, Solano
P.O. Box 4000
Vacaville, CA 95696-4000

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Oakland, California.

VICTORIA H. STAFFORD

PETITION FOR WRIT OF HABEAS CORPUS