IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DELANO TOLDEN,

      Petitioner,

    v.

GARY SWARTHOUT, Warden,

      Respondent.

_____/

No. C 08-03782 CW (PR)

ORDER DENYING PETITION
FOR WRIT OF HABEAS
CORPUS

On August 7, 2008, Petitioner Delano Tolden, a state prisoner incarcerated at California State Prison in Solano, California filed a petition for a writ of habeas corpus asserting four claims: (1) his sentence for failure to register as a sex offender, in violation of California Penal Code § 290(a)(1)(A)(g)(2), infringes his Eighth Amendment right to be free from cruel and unusual punishment; (2) his confession was unconstitutionally admitted into evidence in violation of Miranda v. Arizona; and (3) and (4) his Due Process right to a fair trial was violated by improper jury instructions.  On February 23, 2009, Respondent filed an answer.[1]  On May 27, 2009, Petitioner filed a traverse.  Having considered all of the papers filed by the parties, the Court denies the petition.

---

[1]Plaintiff has named James Tilton, Director of the California Department of Corrections as the respondent, but the proper respondent is the Warden at Solano State Prison, Gary Swarthout.

1

BACKGROUND

2      The following facts are taken from the March 27, 2007 opinion

3  of the California court of appeal on direct appeal from a jury

4  verdict.  <u>People v. Tolden, (Tolden II)</u>, 2007 WL 906619 (Cal. App.)

5  (unpublished).[2]

6      In 1981, Petitioner was convicted of kidnaping, robbery,

7  assault with intent to commit rape, and oral copulation by force

8  stemming from one incident in which he kidnaped four teenagers with

9  a pellet gun and held them for one and one half hours.  In 1991,

10 Petitioner was released on parole and was notified that he was

11 required to register as a convicted sex offender for the rest of

12 his life under the provisions of California Penal Code § 290,

13 which, at that time, required that he register within fourteen days

14 of moving to a new city.[3]  Between January 8, 1991 and March 1,

15 1994, Petitioner registered seven times.  The last time he

16 registered was on March 1, 1994, with the Modesto Police

17 Department.

18     After his release on parole, Petitioner was convicted of two

19 misdemeanors: falsely identifying himself and possession of drug

20 paraphernalia.  Between 1991 and 1995, Petitioner violated parole

21 eight times.  Prior to being released from custody for the parole

22 violations, Petitioner was formally advised of the various

23 conditions of his parole and signed an acknowledgment that he

24

_____

25     [2]Petitioner's first conviction was reversed on direct appeal
   in <u>People v. Tolden (Tolden I)</u>, 2004 WL 1175429 (Cal. App.).
26 <u>Tolden II</u> addressed Petitioner's conviction after his second trial.

27     [3]Section 290 was subsequently amended to require registration
   within five working days.  <u>See</u> <u>People v. Garcia</u>, 25 Cal. 744, 750
28 (2001).

1    understood his duty to comply with parole conditions.

2         Between November, 1993 and September, 1995, Petitioner

3    received ten admonishments on parole.  On December 29, 1995,

4    Petitioner called his parole officer, Larry Owens, who informed him

5    that, because he had left Modesto without permission, he had

6    violated the travel parole condition and that he had to return to

7    Modesto by January 8, 1996.  Petitioner failed to report to Officer

8    Owens, and, as a result, his parole was suspended and a warrant was

9    issued for his arrest.

10        Law enforcement authorities had no record of Petitioner's

11   whereabouts until November 16, 1997, when Officers David Lee and

12   John Cary of the San Jose Police Department received information

13   that Petitioner was living at the Casa Linda Motel in San Jose.

14   Officer Lee further learned that Petitioner was a registered sex

15   offender, he had last registered in 1994 in Modesto, he had not

16   registered in San Jose and he had an arrest warrant for a parole

17   violation.  Officer Lee arrested Petitioner for failing to register

18   as a sex offender.

19        Later that day, Officer Lee interviewed Petitioner.  Before

20   doing so, Officer Lee informed Petitioner of his Miranda rights and

21   asked if he understood them.  Petitioner said that he did and that

22   he was willing to talk.  Officer Lee asked where Petitioner had

23   been since he had last registered as a sex offender.  Petitioner

24   replied that, in November, 1994, he had left Modesto and had lived

25   in various places in Alameda County.  Sometime in 1997, he moved to

26   San Jose, where he was living until his arrest.  Petitioner

27   admitted that he had not registered as a sex offender after leaving

28   Modesto in 1994.

The next day, Officer Gary Olsen of the San Jose Police Department conducted a follow-up interview with Petitioner.[4] Petitioner was sobbing and asked Officer Olsen to turn the recorder off momentarily. Officer Olsen did so. After turning the recorder back on, Officer Olsen said that, before they could talk, he had to advise Petitioner of his <u>Miranda</u> rights. Petitioner said, "I know, I know, I know that." Officer Olsen then advised Petitioner of his rights to remain silent and to have an appointed attorney present at the interview and warned Petitioner that anything he said would be used against him. After Petitioner indicated that he understood, Officer Olsen asked whether he would discuss why he had not registered as a sex offender in San Jose and where he had been living. Before proceeding, Petitioner said he wanted to ask a question off the record. Officer Olsen turned the tape-recorder off and then, after a few minutes, turned it back on. He asked questions, and Petitioner responded to them.

Officer Olsen could not recall what was said either time he turned off the recorder. However, he stated that he did not promise Petitioner anything because he never makes such promises.

During the interview, Petitioner said he had been living in an apartment in Sunnyvale for eighteen months, paying rent, and taking the bus or train to his job in San Jose as a baggage handler for Greyhound, where he had worked since January, 1996. When Petitioner was asked why he had not registered as a sex offender when he got to Sunnyvale, he replied that he was still scared and was trying to get his life together. He thought he "might get hurt

---

[4]The interview was tape-recorded and transcribed. The tape and transcript were admitted into evidence at Petitioner's trial.

trying to hide something." Petitioner said that one reason he
moved from Modesto to San Jose was fear, because he knew about the
murder of a man named Rick at the Modesto Inn in 1995. Petitioner
stated that he was with an armed man during the shooting. When the
man wanted to shoot back, Petitioner said they should leave. The
man threatened Petitioner, saying that he would kill Petitioner, a
police officer and Petitioner's parole officer, if Petitioner ever
returned to Modesto. Petitioner explained that, as a parolee, he
has to talk to the police if they approach him, and he felt that if
people saw him talking to police, they would think he was
"snitching everybody off." When Officer Olsen asked if Petitioner
was trying to hide from his parole officer, Petitioner replied that
he "couldn't even go back down there man, because see the main
thing is I went back down there, they want to smoke my parole."
Officer Olsen understood this to mean that parole would be revoked.

Petitioner told Officer Olsen that he understood that his
obligation to register as a sex offender was a lifetime
requirement. Officer Olsen told Petitioner that a change in the
law required Petitioner to register as a sex offender within five
working days of coming to a new city and Petitioner replied that he
did not know that, observing that he "used to register in 15 days,
nowadays its five days." Petitioner said that he didn't register
when he got to Sunnyvale because "I figured since I was already
registered, you know, I didn't know at that time, that I didn't
know nothing about that at the time, you know." Tolden II, 2007 WL
906619 at *1-4.

At his first trial, a bench trial in the Santa Clara County
superior court, Petitioner was convicted of failing to register as

5

a sex offender and failing to notify the police of his new address and was sentenced to concurrent terms of twenty-five years to life under California's Three Strikes Law.  People v. Tolden (Tolden I), 2004 WL 1175429 *1-2. (Cal. App.) (unpublished).  On May 27, 2004, the California court of appeal ruled that the trial court committed reversible error in holding that it was irrelevant whether Petitioner actually knew he had a duty to register as a sex offender, finding that Petitioner had presented to the trial court "significant evidence" of his mental retardation and limited mental functioning which refuted the allegation of willfulness.  Id. at 4-5.

The case was retried to a jury in Santa Clara County superior court.  On December 13, 2004, the jury found Petitioner guilty of count one, failing to register as a sex offender in violation of California Penal Code § 290(A)(1)(a)(g)(2), but acquitted him of count two, failing to notify police of his change of address.  The court denied Petitioner's motion to strike any prior convictions and sentenced him to a term of twenty-five years to life.  It also imposed a $10,000 restitution fine, a $200 penalty assessment, and a $20 court security fee.

Petitioner timely appealed.  On March 27, 2007, in a written opinion, the California court of appeal affirmed Petitioner's conviction but reduced the fines imposed.  Tolden II, 2007 WL 906619 at *18.  On April 20, 2007, the California court of appeal denied Petitioner's petition for a rehearing.  On June 20, 2007, the California Supreme Court summarily denied his petition for review.

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. Clark v. Murphy, 331 F.3d 1062, 1067 (9th. Cir. 2003). Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as of the time of the relevant state court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000).

To determine whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established law, a federal court looks to the decision of the highest state court that addressed the merits of a petitioner's claim in a reasoned decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  In the present case, the highest court to address the merits of Petitioner's claim is the California appellate court on direct review.

DISCUSSION

I. Eighth Amendment Claim

A. Established Supreme Court Authority

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment).  But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."  Id. at 289-90.  For the purposes of review under 28 U.S.C. § 2254(d)(1), the only "clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, . . . applicable only in the 'exceedingly rare' and 'extreme' case."  Lockyer v. Andrade, 538 U.S. 63, 72, 73 (2003) (citing Harmelin v. Michigan, 501 U.S. 957 (1991) (Kennedy, J., concurring in part and concurring in judgment)).

B. State Appellate Court Opinion (Tolden II)

After reviewing relevant federal and state court opinions, the

8

state court of appeal held that Petitioner's sentence was not more cruel and unusual than that of other prisoners whose harsh sentences were upheld by the courts. <u>Tolden II</u>, 2007 WL 906619 at *15-17.

First, the state appellate court cited <u>People v. Cooper</u>, 43 Cal. App. 4th 815, 825 (1996), for the proposition that Petitioner was punished not just for his current offense, but for his recidivism, and that Petitioner's sentence was "punishment for willfully failing to register as a sex offender and doing so as a recidivist offender." <u>Id.</u> at *15. The state court cited <u>Rummel v. Estelle</u>, 445 U.S. 263, 284-85 (1980), in which the Supreme Court upheld the sentence of a defendant who was given a mandatory life sentence for stealing $120.75 with prior convictions for fraud involving $80 worth of goods and passing a forged check for $28.36. <u>Id.</u> The state court cited <u>Rummel</u>'s reasoning that the primary goal of a recidivist statute is to

> deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes . . . .

<u>Id.</u> (citing <u>Rummel</u>, 445 U.S. at 284-85).

The state court also cited <u>Andrade</u>, 538 U.S. at 77, in which the Supreme Court upheld two life sentences of a defendant who was convicted of petty theft with a prior for taking $153.84 worth of videotapes from two stores on separate occasions. <u>Id.</u> at *16. The defendant's criminal history consisted of a misdemeanor theft conviction, a few felony burglary convictions, two convictions for

9

United States District Court
For the Northern District of California

transporting marijuana, and a parole violation.  Id.  The state

court also cited Ewing v. California, 538 U.S. 11, 30-31 (2003), in

which the Supreme Court upheld the life sentence of a defendant who

was convicted of grand theft for taking three golf clubs worth $399

each, with a past criminal history, spanning 1984 through 1999, of

convictions for grand theft, auto theft, battery, burglary,

robbery, possession of drugs, trespass, and unlawful possession of

a firearm.  Id.

The court also cited California cases in which the courts

upheld the sentences of defendants who were convicted of failing to

register as a sex offender.  For instance, the court cited People

v. Meeks, 123 Cal. App. 4th 695 (2004), where the defendant was

convicted of violating § 290--by failing to register within five

days after changing his address and failing to register within five

days of his birthday--and given a life sentence.  Id. (citing

Meeks, 123 Cal. App. 4th at 700-01).  Meeks had registered at least

nine times between 1982 and 1997 and then failed to do so until his

arrest in 2000.  Id. (citing Meeks).  Meeks had prior convictions

for burglary, possession of arson material, attempted rape, rape,

robbery, assault, possession of drugs and driving under the

influence and numerous parole violations.  Id. (citing Meeks).  The

Meeks court found that the defendant's lengthy criminal record

brought him within the letter and spirit of the Three Strikes Law.

Id. (citing Meeks, 123 Cal. App. 4th at 700-01).

The state appellate court also cited People v. Poslof, 126

Cal. App. 4th 92 (2005), which upheld a sentence of twenty-seven

years to life under the Three Strikes Law for a defendant convicted

of failing to register who had prior convictions for inflicting

10

corporal punishment on a child, lewd conduct with a child, possession of drugs, and parole violations. Id. (citing Poslof, 126 Cal. App. 4th at 109).

The state court distinguished People v. Carmony, 127 Cal. App. 4th 1066 (2005), upon which Petitioner relied. Id. at *17. In Carmony, the defendant was convicted of violating California Penal Code § 290(a)(1)(C) for failing to update his previously reported address, which had not changed, within five days after his birthday. Id. (citing Carmony, 127 Cal. App. 4th at 1071). In finding the defendant's sentence of twenty-five years to life was cruel and unusual, the Carmony court emphasized that the defendant's offense was passive and nonviolent and posed no direct or immediate danger to society because he had correctly registered the proper information the month before his birthday. Id. (citing Carmony, 127 Cal. App. 4th at 1078). The state appellate concluded that, unlike Carmony's offense, Petitioner's offense "directly frustrated the central purpose of the law, and since 1994, he kept local law enforcement authorities from knowing his whereabouts or even that he was in their jurisdiction." Id. at *17.

The state court rejected Petitioner's argument that his criminal history was distinguishable from the prosecution's cited cases because his violent crimes stemmed from one incident in 1981. The court also rejected Petitioner's argument that his mental retardation distinguished him from the defendants in the prosecution's cited cases. Id. at *17.

The court considered evidence regarding Petitioner's mental capacity and ability to function in society. Id. at *5-6. It reviewed the testimony of Geraldine Fegley, Petitioner's supervisor

at the Greyhound terminal at which he was employed, as well as that of Marylyn Beswick, the manager at Petitioner's apartment building in Sunnyvale. Id. at *4-5. Both testified that Petitioner did not appear to have any major problems performing his duties and he seemed to function normally. Id. Santa Clara County Jail Correctional Officers Patricia Fountain and Martin Strosnider, who supervised Petitioner intermittently for over six years, testified that Petitioner satisfactorily performed his job functions as a jail trustee. Id. at *5.

Doctor Timothy Derning, a clinical forensic psychologist, testified that he had met with Petitioner for nine hours and administered various psychological tests. Id. at *5. Doctor Derning concluded that Petitioner had an Intelligence Quotient (IQ) in the 60s. Id. Although Doctor Derning thought Petitioner was capable of registering without help, he opined that the probability that Petitioner would or could do so without help was low. Id.

The court found that Doctor Derning's conclusion that Petitioner's retardation and low IQ rendered him incapable of understanding and complying with his duty to register was rebutted by evidence that he had registered on numerous occasions and by testimony that he was able to understand and perform the duties of his jobs at Greyhound and in jail and his obligation to pay rent regularly. Id. The court found that the tasks Petitioner completed were no less difficult to comprehend and perform than his duty to register. Id. The court concluded, "Simply put, the record does not compel a conclusion that defendant's level of mental functioning so reduced his criminal culpability as to render his sentence grossly disproportionate or unconscionable." Id.

C. Analysis

Given the facts and holdings in <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980), <u>Solem v. Helm</u>, 463 U.S. 277 (1983), <u>Ewing v. California</u>, 538 U.S. 11 (2003), and <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003), the state appellate court's conclusion that Petitioner's history was indistinguishable from established Supreme Court precedent was not contrary to or an unreasonable application of that precedent.

Petitioner cites <u>Gonzalez v. Duncan</u>, 551 F.3d 875 (9th Cir. 2008),[5] where the Ninth Circuit held that a Three Strikes sentence of twenty-eight years to life for violating California Penal Code § 290 was cruel and unusual. <u>Id.</u> at 878-79. However, in <u>Gonzalez</u>, the defendant violated § 290(a)(1)(D), which requires a convicted sex offender to update his registration within five working days of his birthday. Gonzalez had updated his address nine months before his birthday and three months after his birthday, all the while residing at the same address. <u>Id.</u> at 879. The court found that the annual registration requirement was "only tangentially related to the state's interest in ensuring that sex offenders are available for police surveillance," and failure to comply with it was merely a technical violation. <u>Id.</u> at 884. Furthermore, the court could discern no harm from Gonzalez' failure to register because he had resided at the same address that he had registered nine months before and three months after his birthday. <u>Id.</u>

In contrast, Petitioner violated California Penal Code § 290(a)(1)(A)(g)(2), failing to register after a change of

---

[5]<u>Gonzalez</u> was decided after <u>Tolden II</u>. However, <u>People v. Carmony</u>, distinguished in <u>Tolden II</u>, addressed the same issue.

address. As noted by the Gonzalez court, under California law, the distinction between these statutes is critical. Id. at 885. Failing to register after a change in address is not a technical violation of the law, but thwarts the very purpose of the registration statute, to ensure that the whereabouts of sex offenders are known to police. See People v. Sorden, 36 Cal. 4th 65, 72-73 (2005) (purpose of § 290 is to ensure that individuals convicted of sex crimes shall be readily available for police surveillance because the state legislature deemed them likely to recommit these offenses in the future). Exacerbating the situation, Petitioner admittedly had moved several times since he last registered in Modesto, and had failed to register after any of these moves. Furthermore, during this time he had absconded from his parole for committing sex crimes.

Therefore, the Gonzalez decision does not aid Petitioner's claim that his sentence was cruel and unusual.

Finally, Petitioner argues that his sentence is cruel and unusual because he is mentally retarded and has impaired mental functioning. As indicated by the state appellate court, the evidence concerning Petitioner's mental limitations was conflicting. Dr. Derning estimated that Petitioner's IQ was 65 to 67, RT at 547, 551, and his reading ability was between the second and fourth grade level, RT at 592. However, in other testing, Petitioner scored from 69 to above 70. RT at 558, 565. And, on cross-examination, Dr. Derning admitted that, on tests conducted by other professionals, Petitioner scored in the average intelligence range. RT at 594-95.

Furthermore, the jurors listened to and read a transcript of

14

the taped interview that Officer Olsen conducted of Petitioner.
The jury also heard testimony from Ms. Fegley and Correctional
Officer Fountain, who supervised Petitioner at his jobs, and Ms.
Beswick, the manager of Petitioner's apartment building.  These
witnesses testified that Petitioner functioned well, understood
directions, was a hard worker and learned quickly, with the proper
training.

This record supports the state court's conclusion that Dr.
Derning's testimony that Petitioner's impaired mental functioning
rendered him incapable of understanding his duty to register was
rebutted by other evidence.

The Court concludes that the state court's denial of
Petitioner's Eighth Amendment claim was not contrary to or an
unreasonable application of Supreme Court authority or an
unreasonable finding of the facts in light of the evidentiary
record.  Petitioner's claim for relief on the ground that his
sentence violated the Eighth Amendment is denied.

II. <u>Miranda</u> Claim

A. Established Supreme Court Authority

In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court
held that certain warnings must be given before a suspect's
statement made during custodial interrogation can be admitted in
evidence.  <u>Miranda</u> requires that a suspect subjected to custodial
interrogation be advised that he has the right to remain silent,
that statements made can be used against him, and that he has the
right to have counsel appointed.  These warnings must precede any
custodial interrogation, which occurs whenever law enforcement
officers question a suspect after taking him into custody or

otherwise significantly depriving him of freedom of action. <u>Id.</u> at

444. Once properly advised of his rights, an accused may waive

them, if he does so voluntarily, knowingly and intelligently. <u>Id.</u>

at 475. The validity of a waiver of <u>Miranda</u> rights depends upon

the totality of the circumstances, including the background,

experience and conduct of the defendant. <u>United States v. Bernard</u>

<u>S.</u>, 795 F.2d 749, 751 (9th Cir. 1986). The government must prove

waiver by a preponderance of the evidence. <u>Colorado v. Connelly</u>,

479 U.S. 157, 168-69 (1986). The waiver need not be express as

long as the totality of the circumstances indicates that it was

knowing and voluntary. <u>North Carolina v. Butler</u>, 441 U.S. 369, 373

(1979). A showing that a defendant knew his rights generally is

sufficient to establish that he knowingly and intelligently waived

them. <u>Paulino v. Castro</u>, 371 F.3d 1083, 1086-87 (9th Cir. 2004).

B. State Appellate Court Opinion (<u>Tolden II</u>)

The state court reviewed the circumstances of Petitioner's

interviews with Officer Lee and Officer Olsen and addressed his

claim that he did not waive his <u>Miranda</u> rights before his second

interview with Officer Olsen.

> These circumstances support the trial court's finding
> that defendant implicitly waived his rights before
> speaking to Officer Olsen. Indeed, courts have
> repeatedly found implied waivers where, as here, a
> suspect has been advised of his rights, the suspect
> indicates he or she understands them, there is no
> evidence of inducement or coercion, the suspect does not
> request an attorney, and thereafter the suspect freely
> talks to police and answers questions. (Citations
> omitted).
>
> Defendant claims we may not infer his waiver from a
> silent record. (<u>See</u> <u>Miranda</u>, 384 U.S. at 498-99).
> However, the record is not silent, only the tape is, and
> the circumstances noted above support a finding that
> defendant was familiar with <u>Miranda</u> warnings and waiver
> procedure, having just gone through it with Officer Lee

the day before; Officer Olsen advised him of his rights; he did not request an attorney; Officer Olsen did not promise defendant anything or coerce him; and thereafter, he freely discussed his case.

Defendant claims that a waiver should not be inferred because his request that the recorder be turned off showed that he was reluctant to speak to Officer Olsen and had concerns about waiving his rights. This claim is speculative because the record does not reveal the reason for defendant's request. Moreover, even assuming it was reasonable to infer reluctance, that is not the only reasonable inference, and the trial court rejected it. Furthermore, the circumstances do not compel a finding that defendant was reluctant to talk or concerned about waiving his rights. Rather, it appears that defendant simply wanted to ask a more private or personal question and keep the subject between him and Officer Olsen. He certainly indicated no reluctance to talk when the recorder was turned back on.

Defendant argues that even if his conduct implies a waiver, his mental deficiencies and subnormal intelligence negate a finding that he knew what he was doing. However, there was no evidence before the trial court when it admitted defendant's statement that defendant was suffering from any mental deficiency or was otherwise incapable of understanding and voluntarily waiving his rights. Moreover, his conversation with Officer Olsen does not establish that he has a low IQ or suffers from some mental impairment. On the contrary, during the interview, he spelled names of people; he recited his social security and driver's license numbers; he remembered dates, addresses, phone numbers, and the names of a co-worker, a police officer, and a homicide victim.

Tolden II, 2007 WL 906619 at *6-7.

C. Analysis

Petitioner asserts that the appellate court's decision was an unreasonable application of Supreme Court authority. He makes the same arguments here that the state court rejected. After reviewing the record, the Court concludes that the appellate court's decision was not contrary to or an unreasonable application of Supreme Court authority. This claim for habeas relief is denied.

17

III. Jury Instructions

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72. In other words, the court must evaluate challenged instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982).

In order to obtain habeas relief for a due process violation, the petitioner must show both an actual error and a "reasonable likelihood" that the jury applied the instruction in a way that violates the Constitution, such as relieving the state of its burden of proving every element beyond a reasonable doubt. Waddington v. Sarausad, __ U.S. __, 129 S. Ct. 823, 831 (2009) (internal quotations and citations omitted.) A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. Calderon v. Coleman, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, before

18

granting relief in habeas proceedings.  <u>Id.</u> at 146-47 (citing

<u>Brecht</u>, 507 U.S. at 637).

A. Conflicting Instructions

Petitioner argues that it was error to give CALJIC No. 1.20

and CALJIC No. 3.30 because they conflicted with the instructions

about the requirement of actual knowledge of the registration

requirement.

The trial court gave the following jury instructions that are

relevant to the knowledge requirement.

> The word "wilfully" when applied to the intent with which
> an act is done or omitted means with a purpose or
> willingness to commit the act or to make the omission in
> question.  The word "wilfully" does not require any
> intent to violate the law or to injure another or to
> acquire any advantage.

CALJIC No. 1.20, RT at 671.

> Under the statutory definition of "wilfully," an omission
> to act would not be wilful if objective circumstances
> beyond the defendant's control prevented him from acting.
> For example, a debilitating injury, illness, or mental
> infirmity might objectively prevent a defendant from
> registering in a timely fashion, thereby rendering
> "unwilful" the defendant's failure to register.

RT at 671.

> . . .

> In the crimes charged in Counts 1 or 2 there must exist a
> union or joint operation of act or conduct and general
> criminal intent.  General criminal intent does not
> require an intent to violate the law.  When a person
> intentionally does that which the law declares to be a
> crime, he is acting with general criminal intent, even
> though he may not know that his act or conduct is
> unlawful.

CALJIC No. 3.30, RT at 678.

> In the crimes charged in Counts 1 and 2 there must exist
> a union or joint operation of act or conduct and a
> certain mental state in the mind of the perpetrator.
> Unless this mental state exists, the crimes to which it
> relates are not committed.

RT at 678.

> In the crime of failure to register as a sex offender, the necessary mental state is actual knowledge.

RT at 678-79.

> The information in this case charges that the defendant, Delano Tolden, committed the following felonies, to wit:

> Count 1, on or about November 16, 1997, in the above named judicial district, the crime of failing to register as a sex offender in violation of Penal Code Section 290(a)(1)(A)/(G)(2), a felony, was committed by Delano Tolden, who having been previously convicted of a felony offense, which requires him to register pursuant to Penal Code Section 290, was required to register under Penal Code Section 290, wilfully failed to register with the chief of police of the law enforcement agency in the city in which he resided and or was domiciled, to wit, the City of Sunnyvale, California, within 14 working days of coming into the city.

RT at 679

> . . .

> The defendant is accused in Count 1 of the Information of having violated Penal Code Section 290(a)(1)(A)/(G)(2), a felony.

RT at 679.

> Every person who, having been previously convicted of a qualifying felony sex offense, and wilfully fails to register with the chief of police of the law enforcement agency of the city in which he resides or is domiciled within 14 working days of coming into the city is guilty of violating Penal Code Section 290(a)(1)(A)/(G)(2) of the Penal Code, a felony.

> In order to prove such a crime, each of the following elements must be proved:

> One, the defendant is a person who, having previously been convicted of a qualifying felony sex offense, is required to register as a sex offender pursuant to Penal Code Section 290.

> And, two, defendant moved into a city in the State of California and established a new residence and domicile.

> And, three, the defendant had actual knowledge of his duty to register.

> And, four, having that knowledge, defendant wilfully
> failed to register within 14 working days with a law
> enforcement agency having jurisdiction over his place or
> residence or domicile.

RT at 680.

After counsel's closing arguments, the court repeated the

instruction on the elements of the crime of failing to register as

a sex offender.  <u>See</u> RT at 757-58 (restating instructions at RT

679-80).

1. State Appellate Court Opinion (<u>Tolden II</u>)

Petitioner relied upon two California Supreme Court cases,

<u>People v. Garcia</u>, 25 Cal. 4th 744 (2001), and <u>People v. Barker</u>,

34 Cal. 4th 345 (2004).  The state court gave several reasons for

rejecting his argument.  The court first noted that both CALJIC

Nos. 1.20 and 3.30 are proper statements of the law, and that

neither <u>Garcia</u> nor <u>Barker</u> held otherwise.  It distinguished

<u>Garcia</u> and <u>Barker</u> on the ground that in those cases the court did

not instruct that actual knowledge was required, as did the trial

court in Petitioner's case.  The court stated that neither case

> suggests that it is error to give CALJIC Nos. 1.20 and
> 3.30 in registration cases because they would conflict
> with a proper instruction requiring actual knowledge.
> Indeed, neither instruction expressly states that
> actual knowledge is <u>not</u> a necessary element or that a
> defendant may be convicted regardless of whether he
> knew he had to register.  Moreover, when given with an
> explicit instruction requiring actual knowledge, CALJIC
> Nos. 1.20 and 3.30 supplement it with additional and
> correct legal principles.  Together the instructions
> inform jurors that to convict, they must find that the
> defendant actually knew of the duty to register, and he
> knew about it when he allegedly failed to do so;
> however, they need not also find that he did so with a
> specific intent to break the law. [Emphasis in
> original].

> Finally, we note again that counsel focused their
> closing arguments on the element of actual knowledge.
> The prosecutor expressly acknowledged her duty to prove

21

actual knowledge; and defense counsel argued that
defendant's mental disabilities prevented him from
knowing and understanding this duty.  Thereafter, the
court's instructions tracked counsel's arguments and
expressly required a finding of actual knowledge.
Moreover, after giving CALJIC 3.30, the court
reiterated it more specifically, stating, "In the
crimes charged in Counts 1 and 2 there must exist a
union or joint operation of act or conduct and a
certain mental state in the mind of the perpetrator.
Unless this mental state exists, the crimes to which it
relates are not committed.  [¶] In the crime of failure
[to] register as a sex offender, the necessary mental
state is actual knowledge."

Thus, even assuming for purposes of argument that
CALJIC Nos. 1.20 and 3.30 could theoretically cause
some ambiguity concerning the knowledge requirement, we
would not find instructional error here.  There is no
reasonable likelihood that the jurors misunderstood the
instructions to permit a conviction without a finding
of actual knowledge.  (Estelle v. McGuire, 502 U.S. at
72, n.4; People v. Smithey, 20 Cal. 4th 936, 963
(1999)).

Tolden II, 2007 WL 906619 at *13.

     2. Analysis

The state appellate court's ruling is not contrary to or an

unreasonable application of Supreme Court authority, or even of

state law.  In Garcia, the California Supreme Court first held

that a violation of § 290 required actual knowledge of the duty

to register.  Garcia, 25 Cal. 4th at 752-53.  Thus, the jury

instructions in Garcia and Barker, which was tried the year

before the California Supreme Court issued its opinion in Garcia,

did not contain an instruction on actual knowledge of the duty to

register.  In both cases, the California Supreme Court held that

giving CALJIC Nos. 1.20 and CALJIC 3.30[6] constituted instructional

error because they would allow the jury to convict even if the

---

     [6]In Barker, the court instructed with CALJIC No. 4.36, which
is similar to CALJIC No. 3.30.

defendant was unaware of his duty to register.[7]

In contrast, in this case, the court instructed the jury several times that actual knowledge was required to convict. The jury was told that the necessary mental state necessary to commit a violation of § 290 was actual knowledge. See RT 678. The jury also was told twice that actual knowledge was an element of the crime. See RT at 680; 757-58. Because the instructions here contained the actual knowledge requirement that was lacking in Garcia and Barker, those cases can be distinguished.

In People v. Edgar, 104 Cal. App. 4th 210 (2002), another case cited by Petitioner where the court reversed based on instructional error, the trial was likewise held before Garcia was published and the instructions did not contain a knowledge requirement. In People v. Poslof, 126 Cal. App. 4th 92 (2005), the trial was held after Garcia and included instructions on actual knowledge as well as CALJIC No. 3.30. The court held that it was unlikely the jury disregarded the instructions to find that the defendant had actual knowledge of the duty to register, and that any error in giving CALJIC No. 3.30 was harmless beyond a reasonable doubt. Id. at 100.

Furthermore, the court noted that CALJIC Nos. 1.20 and 3.30 do not state that actual knowledge is not a necessary element of the crime of failing to register as a sex offender or that a defendant can be convicted regardless of whether he knew he had

---

[7]In both Garcia and Barker, the court found that the error was harmless beyond a reasonable doubt because the record amply reflected that the defendants were aware of the registration requirement and counsel did not claim the contrary in trying the case to the jury. Garcia, 25 Cal. 4th at 755; Barker, 34 Cal. 4th at 271.

23

to register.  The court noted that immediately after giving

CALJIC 3.30, the trial court specifically instructed that actual

knowledge is the mental state required to find that the defendant

committed the crime of failing to register.  Further, the court

correctly concluded that a finding that the defendant did not

have the specific intent to break the law would not conflict with

a finding that the defendant actually knew of the duty to

register.

Thus, the state court's conclusion that there was no

reasonable likelihood that the jurors misunderstood the

instructions to permit a conviction without a finding of actual

knowledge was not contrary to or an unreasonable application of

the law.  This claim for habeas relief is denied.

B. Failure to Instruct on an Element of the Offense

Petitioner argues that the instructions allowed the jury to

convict him without finding that he had actual knowledge of the

requirement to register within fourteen days after moving to a

new city.

1. State Appellate Court Opinion (Tolden II)

The state court rejected this claim as follows.

Under section 290, it is unlawful to "willfully"
violate any of the registration requirements in the
statute.  In People v. Garcia, 25 Cal. 4th 744 (2001),
the Supreme Court held that a conviction under section
290 requires proof that the defendant had actual
knowledge of the registration requirement he or she
violated.  Id. at 752.  The court explained that
willfulness implies a purpose or willingness to make
the omission.  "Logically one cannot purposefully fail
to perform an act without knowing what act is required
to be performed."  Id.

Defendant contends the court misinstructed on the
actual knowledge element.  He quotes the following
portion of the court's instruction: "In order to prove

24

such a crime, each of the following elements must be
proved: [¶] One, the defendant is a person who, having
previously been convicted of a qualifying felony sex
offense, is required to register as a sex offender
pursuant to Penal Code Section 290. [¶] And, two,
defendant moved into a city in the State of California
and established a new residence and domicile. [¶] And,
three, the defendant had actual knowledge of his duty
to register. [¶] And, four, having that knowledge,
defendant willfully failed to register within 14
working days with a law enforcement agency having
jurisdiction over his place of residence and domicile."

Defendant argues that the instruction is incomplete:
Although it required proof that defendant knew he had a
duty to register, it did not specifically require
knowledge of his duty to register <u>within 14 days of
moving into a new city</u> -- i.e., the requirement he was
accused of violating [Emphasis in original].

. . .

Here, defendant isolates a portion of the court's
charge from what immediately preceded it: "[D]efendant
is accused in Count 1 in the Information of having
violated Penal Code Section 290(a)(1)(A)(G)(2), felony.
Every person who, having been previously convicted of a
qualifying sex offense and willfully fails to register
with the chief of police of the law enforcement agency
of the city in which he resides and is domiciled,
<u>within 14 days of coming into the city</u>, is guilty of
violating Penal Code section 290 (a)(1)(A)(G)(2) of the
Penal Code, a felony." [Emphasis added by appellate
court]. Indeed, the court read the complete charge to
the jury twice. Taken as a whole, the court's charge
adequately conveyed the prosecution's duty to prove
that defendant had actual knowledge of his duty to
register within 14 days of moving to a new city --
i.e., Sunnyvale.

. . .

Also, jurors . . . were instructed in this case -- "not
[to] single out any particular sentence or individual
point or instruction and ignore the others" but to
"consider the instructions as a whole and each in light
of the others." (<u>See</u> CALJIC No. 1.01.)

Here, it was undisputed that (1) defendant was required
to register, (2) he moved from Modesto to Sunnyvale in
Santa Clara County and lived there for some time, and
(3) after moving, he never registered. Thus, the
central issue was whether defendant knew he was
supposed to register after he arrived in Sunnyvale. . .
. The prosecutor expressly told jurors that defendant

**United States District Court**

For the Northern District of California

> was charged with willfully failing to register within
> 14 days of moving to a new city; she noted a few times
> that defendant was repeatedly informed of that specific
> duty; and she expressly acknowledged her duty to prove
> that defendant had actual knowledge of his duty to
> register within 14 days of moving to Sunnyvale.
> Defense counsel pointed out that the notification form
> listed his duty to register within 14 days and argued
> that due to defendant's cognitive impairment, he did
> not understand that duty.
>
> After argument, the court reiterated what the
> prosecutor had said. . . .
>
> Given the arguments of counsel and the close temporal
> connection between the two parts of the court's charge,
> we do not consider it reasonably likely that jurors
> found that defendant had actual knowledge of some
> unspecified general duty to register and not the
> specific duty to register within 14 days of moving to a
> city.

Tolden II, 2007 WL 906619 at *10-12.

        2. Analysis

    Petitioner argues that the trial court's instruction on the elements of § 290(a)(1)(A)(g)(2) was incomplete because it failed to inform the jury that he must have actual knowledge of the requirement to register fourteen days after moving to a new city.

    The Court has reviewed the jury instructions quoted above and the closing arguments of the prosecutor and defense attorney. See RT at 702 (prosecutor's closing: "the defendant must have actual knowledge of his duty to register, and having that knowledge, knowing that he's got to register, he's got to willfully fail to register within 14 days of coming into the city."); RT at 727, 730 (defense closing). The instructions could have more clearly stated the need for actual knowledge of the fourteen day requirement. It is a close question whether the instructions together with the closing arguments sufficiently informed the jury that it had to find that Petitioner had actual knowledge that he

26

was required to register within fourteen days of moving to a new city. However, even if the instructions were insufficient, the state court reasonably found no likelihood that the deficiency affected the jury's verdict.

There was evidence that Petitioner knew he had to register. In Petitioner's interview with Officer Olsen, he told Officer Olsen that he understood the registration requirement was a lifetime obligation. When Officer Olsen informed Petitioner that a change in the law required him to register within five days of moving to a new city, Petitioner replied that he used to register in fifteen days. The state court was not unreasonable in ruling it unlikely the jury found that Petitioner knew he was required to register but did not know that he was required to do so within fourteen days. The jury knew that Petitioner had not registered for three years.

Any instructional error in failing to state more clearly that actual knowledge of the fourteen day period was required would not have caused a substantial or injurious effect or influence on the jury verdict. The state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This claim for habeas relief is denied.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. The Clerk of the Court shall

enter judgment and close the file.  The parties shall bear their own costs.


IT IS SO ORDERED.


Dated: March 1, 2010

_____
CLAUDIA WILKEN
United States District Judge